### IN THE UNITED STATES DISTRICT COURT FOR THE
### NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| TRACY HUBBARD, Individually, and as Personal Representative of the Estate of Gary Vincent Hubbard, Deceased,<br><br>Plaintiff,<br><br>v.<br><br>SALEM SAVARD INDUSTRIES; IC BUS OF OKLAHOMA, LLC; and KIRBY SMITH MACHINERY, INC.,<br><br>Defendants. | No. 08-CV-599-TCK-PJC |

### OPINION AND ORDER

Before the Court is the Motion for Summary Judgment of Defendant IC Bus of Oklahoma, LLC ("IC Bus") (Doc. 13).

**I.      Background**

In March 2006, IC Bus contracted with Paint Facilities Engineering, Inc. ("PFE") to install a volatile organic compound ("VOC") abatement system at the IC Bus plant located in Tulsa, Oklahoma. The VOC abatement system included a seventy-foot tall exhaust stack, which was braced off the outside west wall of the existing building. PFE subcontracted with Salem Savard Industries ("Salem"), a sheet metal fabricator and abatement equipment installation house, to install the VOC abatement equipment at the IC Bus plant. Under the terms of the subcontract between PFE and Salem, Salem agreed to provide and install the abatement equipment and rent any cranes, lifts, etc. that were necessary to complete the job. In accordance with this agreement, Salem selected and rented a crane from Kirby Smith Machinery to use in installing the VOC equipment. It is undisputed that Salem was hired as an independent contractor and that the work of Salem's employees at the IC Bus plant was not directed by IC Bus or PFE.

Gary Hubbard ("Hubbard") was an employee at Salem and was a member of a four-man crew, led by crew foreman Donald Minor ("Minor"), sent to install the VOC abatement equipment at the IC Bus plant. On September 13, 2006, the crew, including Hubbard, was installing the exhaust stack on the outside of the west wall of the IC Bus plant. Minor was operating the crane to move sections of exhaust pipe into place between the building and a large abatement unit. The crew had already installed one ten-foot section of stack pipe and had rigged a twenty-foot section of stack pipe (weighing 1,294 pounds) to the crane cable in order to hoist it above the first section of stack pipe. Hubbard was sitting or standing on an eight-foot ladder between the building and the abatement unit to help guide the stack pipe into place. As Minor suspended the second section of stack pipe above the first section of stack pipe, the rigging used by the crew to attach the stack pipe to the crane cable failed, causing the stack pipe to fall, strike Hubbard, and kill him. It is undisputed that the stack pipe fell because a bolt, which was improperly used in rigging the pipe to the crane, snapped off.

The Occupational Safety and Health Administration ("OSHA") investigated the accident and cited Salem for five safety violations related to the use and operation of the crane and the manner in which the pipe was rigged to the crane. OSHA found that such violations exposed Salem employees to the hazard of being struck or crushed by falling pipe. OSHA did not cite IC Bus for any safety violations.

Plaintiff Tracy Hubbard, individually and as personal representative of Hubbard's estate, thereafter initiated suit against IC Bus, asserting claims for negligence and punitive damages.[1]

---

[1] Plaintiff also filed suit against Kirby Smith Machinery and Salem but has dismissed those claims, rendering IC Bus the sole Defendant in this case.

Specifically, Plaintiff alleges IC Bus was negligent in: (1) failing to ensure individuals in its employ or acting on its behalf "were fully trained and able to properly and safely utilize the crane"; (2) failing to "ensure the crane was of proper size and/or grand and/or specifications to perform its intended function safely"; and (3) failing to "monitor the workplace to ensure adequate safety measures and/or protocols were followed." (Pet. 2.) IC moved for summary judgment as to Plaintiff's negligence and punitive damages claims. In her response brief, Plaintiff "confesses Defendant's Motion for Summary Judgment on the issue of [p]unitive [d]amages," (Pl.'s Resp. to Def.'s Mot. for Summ. J. 1), leaving only the negligence claim at issue.

## II.     Summary Judgment Standard

Summary judgment is proper only if "there is no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party bears the burden of showing that no genuine issue of material fact exists. *See Zamora v. Elite Logistics, Inc.*, 449 F.3d 1106, 1112 (10th Cir. 2006) (citation omitted). The Court resolves all factual disputes and draws all reasonable inferences in favor of the non-moving party. *Id.* (citation omitted). However, the party seeking to overcome a motion for summary judgment may not "rest on mere allegations" in its complaint but must "set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). The party seeking to overcome a motion for summary judgment must also make a showing sufficient to establish the existence of those elements essential to that party's case. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323-33 (1986).

## III.    Discussion

In order to prevail on her negligence claim, Plaintiff must demonstrate the following: (1) IC Bus owed a duty to protect Hubbard from injury; (2) IC Bus breached that duty; and (3) IC's breach

was the proximate cause of Hubbard's death. *See Iglehart v. Bd. of County Comm'rs of Rogers Cnty.*, 60 P.3d 497, 502 (Okla. 2002). The existence of a legally cognizable duty is the first prerequisite in a negligence action, and whether one party owes a duty to another is a question of law that often depends on the relationship of the parties. *See Durant v. Honey Creek Entm't Corp.*, 54 P.3d 100, 105 (Okla. 2002); *Young v. Bob Howard Auto., Inc.,* 52 P.3d 1045, 1047 (Okla. Civ. App. 2002). IC Bus argues that summary judgment is appropriate because it did not owe a duty to Hubbard.

Under Oklahoma law, "[w]here an owner of property engages an independent contractor to do work on his premises, he owes to the contractor's employees who enter the premises to perform the work the duty of exercising reasonable care to furnish them with a safe place to work." *Hatley v. Mobil Pipeline Co.*, 512 P.2d 182, 186 (Okla. 1973) (citing *Vecchio v. Anheuser-Busch, Inc.,* 328 F.2d 714, 718 (2d Cir. 1964)); *see Marshall v. Hale-Halsell Co.*, 932 P.2d 1117, 1119-20 (Okla. 1997). "This duty is qualified, however, by the rule that one who engages an independent contractor to do work for him, and [w]ho does not himself undertake to interfere with or direct that work, is not obligated to protect the employees of the contractors from hazards [w]hich are incidental to or part of the very work which the independent contractor has been hired to perform." *Hatley*, 512 P.2d at 186 (citing *Vecchio*, 328 F.2d at 718).

A review of the evidence in the record demonstrates that IC Bus did not owe a legally cognizable duty to Hubbard. First, it is undisputed that IC Bus did not take any action to "interfere with or direct the work" performed by Salem's crew. *See Hatley*, 512 P.2d at 186. Specifically, IC Bus had no role in renting the crane involved in the accident and did not assist, direct, supervise, or control Salem's employees in operating said crane. Nor did IC Bus assist, direct, supervise, or

4

control Salem's employees in rigging the stack pipe to the crane. In short, IC Bus had no involvement with the work performed by Salem's crew.

Further, the evidence demonstrates that Hubbard's death was not the result of any condition on IC Bus's property rendering the premises unsafe. Under the terms of its contract with PFE, Salem agreed to provide and install the abatement equipment and rent any necessary cranes or lifts. Thus, the hazard to which Hubbard was exposed – namely, the possibility that he would be struck or crushed by a stack pipe falling from a crane – was incidental to and a part of the very work that Salem was hired to perform. Accordingly, IC Bus did not owe a duty to protect Hubbard from such hazard. *See Marshall*, 932 P.2d at 1119-20 (finding company did not owe duty to employee of independent contractor when employee ran over foot with pallet lift, and use of lift was incidental to and a part of the work performed by independent contractor) (affirming district court's dismissal of negligence claim on this basis); *Hatley*, 512 P.2d at 186 (finding owner of premises did not owe a duty to employee of independent contractor when hazard to which employee was exposed was incidental to and a part of the work to which contractor agreed to perform) (affirming dismissal of negligence claim); *Young*, 52 P.3d at 1050 (holding car dealership did not have duty to protect security guard, who was shot and killed while on duty, when hazard of being shot was incidental to and a part of the work the security company was hired to perform).

Finally, the Court rejects Plaintiff's argument that IC Bus may be held liable pursuant to the "inherently dangerous activity" exception. Under such exception, a company "who performs work through an independent contractor is not liable for damages to third persons caused by the negligence of the contractor *except where the work is inherently dangerous* or unlawful or where the employer owes a contractual or defined legal duty to the injured party in the performance of the

work." *Young*, 52 P.3d at 1050 (citing *Williamson v. Fowler Toyota, Inc.*, 956 P.2d 858, 860 (Okla. 1998)).  However, the "the inherently dangerous exception . . . does not extend to employees of the independent contractor," *Young*, 52 P.3d at 1051, making it inapplicable to the case at bar.  The Court therefore finds that IC Bus did not owe a duty to Hubbard, mandating summary judgment as to Plaintiff's negligence claim.

### IV.   Conclusion

For the reasons outlined herein, the Court GRANTS the Motion for Summary Judgment of Defendant IC Bus of Oklahoma, LLC (Doc. 13).  A separate judgment will be entered forthwith.

**ORDERED this 9th day of August, 2010.**

**TERENCE C. KERN**
**UNITED STATES DISTRICT JUDGE**